--

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

LOUIS BARRAS, SR.                           CIVIL ACTION NO. 12-CV-197

VERSUS                                      JUDGE DOHERTY

AMERADA HESS CORPORATION,                   MAGISTRATE JUDGE HANNA
ET AL.

### REPORT AND RECOMMENDATION

Before the undersigned, on referral from the District Judge for a report and recommendation, are the defendants' motions to dismiss pursuant to Rule 12(b)(6).  [Rec. Docs. 328-333, 340]  The extensive factual and procedural background contained in the Report and Recommendation published August 1, 2012 at Rec. Doc. 372 is adopted by reference.

*A. The amendment to the pleadings*

Previously in this litigation, the plaintiffs were given leave to amend their complaint to allege a specific harm, to a specific plaintiff(s), caused by the conduct of a specific defendant(s), with sufficient factual detail to establish a maritime tort for each.  [Rec. Doc. 263, p. 18, adopted by the district court at Rec. Doc. 269]  In response to this, the particularized factual allegations by plaintiff

1

Louis Barras, Sr. are set out at Paragraphs 255 and 256 of the Fifth Supplemental

and Amending Complaint for Damages [Rec. Doc. 280]:

255.

Plaintiff Louis Barras, Sr. quit school at the age of 14 and started
commercial fishing at the age of 15.  He is not able to read and write.
He has raised 4 children and 1 grandchild on a commercial fishing
livelihood.  In the 1960s he was able to fish a hundred traps in those
days and catch twenty-five, thirty sacks.  Now he must fish five to six
hundred cages to catch the same amount sometimes.  According to
Plaintiff Barras, the Basin was a pretty place to see when he started.
There was a current in the swamps one end to the other before the
pipelines and canal locations.  It started silting up, the trees-Willow
trees started to grow and it stopped the current.  Plaintiff Barras
testified that he used to fish in Cochon Bay a long time ago, but now
he does not because the water stays pretty bad in there.

256.

Plaintiff, Louis Barras, Sr. typically utilized the Bayou Benoit and
Sandy Cove landings as his ports of choice.  He utilizes his registered
commercial vessel, an 18-foot aluminum skiff powered by a 40 hp
outboard motor and a 75 hp outboard motor whichever is needed.  He
has fished in the following fishing areas within the Buffalo Cove area
known as Beau Bayou, Buffalo Cove, Red Eye, Cocodrie, Little Bay
Baronne, Big Bay Baronne, Bay Haha, Bayou Ella, Bayou Lemon,
Lake Chicot, Grevenburg, Mud Cove, and Bayou Mier.  His
commercial fishing activities have been adversely impacted by the
pipeline, dredging, and canal activities of Defendants HESS
CORPORATION f/k/a AMERADA HESS CORPORATION,
DENBURY RESOURCES, INC., CONOCOPHILLIPS COMPANY,
CONCHA CHEMICAL PIPELINE LLC, ENTERPRISE LOU-TEX
PROPYLENE PIPELINE, L.P., SOUTHERN NATURAL GAS
COMPANY, BRIDGELINE HOLDINGS, LLC, SHELL PIPELINE
COMPANY LP, SORRENTO PIPELINE COMPANY,

ENTERPRISE PRODUCTS COMPANY, WILBROS RPI, INC.,
DENBURY RESOURCES, INC., FLORIDA GAS TRANSMISSION
COMPANY, EL PASO FIELD SERVICES MANAGEMENT INC.,
EXXON MOBIL CORPORATION, UNION OIL COMPANY OF
CALIFORNIA, THE DOW CHEMICAL COMPANY, DOW
INTRASTATE GAS COMPANY, TEXACO PIPELINES, LLC.,
THE LOUISIANA LAND & EXPLORATION CO., and KERR-
MCGEE FEDERAL LIMITED PARTNERSHIP.  The activities of
the foregoing Defendants have caused Plaintiff to suffer damages,
including, but not limited to lost earnings, loss of earning capacity,
loss of a hope, property damages, diminution of property value, lost
catches and/or lost ability to catch wildlife in the Atchafalaya Basin,
loss of use, loss of venue, lost income, lost profits, loss of business
opportunity, job and earning capacity, business interruption loss, loss
of ability to support Plaintiffs' families, loss of food for personal
consumption, loss of way of life, loss of enjoyment, loss of travel,
loss of access to the Atchafalaya Basin and places within, loss of
navigation, nuisance, inconvenience, costs of repair and replacement,
costs of additional traps, materials, fuel and vessel expenses, natural
resource damages, mental distress and anguish, attorney's fees,
investigation costs, and costs incurred in connection with this
litigation.          [Rec. Doc. 280]

It has already been recommended that Denbury Resources, Inc., Concha

Chemical Pipeline, L.L.C., Enterprise Lou-Tex Propylene Pipeline L.P.,

Bridgeline Holdings, L.P., Shell Pipeline Company LLP, Sorrento Pipeline

Company, Wilbros RPI, Inc., and Dow Intrastate Gas Company be dismissed from

this litigation [Rec. Doc. 372] on the basis that none of the plaintiffs have set forth

a cause of action in maritime tort against these defendants.  As to each of the

remaining defendants, the undersigned recommended the motions to dismiss be

denied in part to the extent the allegations do set forth sufficient facts to establish

3

maritime jurisdiction as necessary to prosecute a claim in maritime tort.[1]  What remained to be resolved is whether the particular claims of each plaintiff stated a cause of action against some or all of the remaining defendants.

The allegations that are relevant to the area fished by Mr. Barras are as follows:

1. Amerada Hess conducted dredging operations in Lake Chicot from the 1960's to the present, creating spoil banks that impacted navigability and water quality in violation of law and its permit issued by the Army Corps of Engineers.  [Paras. 156-157, 160, 162-168, 170-174, 181, 183-184, 188, 192, 195, 202-205, 214, 217-218, 220, 222]

2. Southern Natural Gas Co. conducted dredging operations beginning in 1958 that created spoil banks that allegedly remain to this day that impacted the navigability and water quality of Cocodrie Swamp, Beau Bayou, Bay Baronne, and Bay Haha in violation of law and its permit issued by the Army Corps of

---

[1]    The Court notes that jurisdiction based on 28 U.S.C. § 1331 would also be proper as to claims brought against Anadarko Petroleum and its insurer, Aegis, as set forth in the removal petition, [Rec. Doc. 1] and this Court's Jurisdiction Review [Rec. Doc. 140].  However, as all state law claims against the non-insurer defendants have been dismissed by final judgment, a maritime tort must still be pled as to these defendants.

Engineers.  [Para. 154]

3. Enterprise Products Co., through its predecessor in interest, Wanda Petroleum, conducted dredging operations in 1969 that created spoil banks that allegedly remain to this day that impacted the navigability and water quality of Cocodrie Swamp, Beau Bayou, Buffalo Cove, Haha Bay, Cochon Bay and Lake Chicot in violation of law and its permit issued by the Army Corps of Engineers. [Para. 187]

4. Florida Gas Transmission Co. conducted dredging operations in 1962 that created spoil banks that allegedly remain to this day that impacted the navigability and water quality of Beau Bayou, Buffalo Cove, Bayou Ella, and Lake Chicot in violation of law and its permit issued by the Army Corps of Engineers. [Para 161].

5. El Paso Field Services Management, Inc., Union Oil Company of California and Exxon Mobil Corporation, through their predecessor in interest, Sibon Pipeline Co., conducted dredging operations in 1960 that created spoil banks that allegedly remain to this day that impacted the navigability and water quality of Buffalo Cove and Lake Chicot in violation of law and its permit issued by the Army Corps of Engineers.  [Par. 155]

5

6. Exxon Mobil Corporation, through its predecessor in interest, Humble Oil Co., conducted dredging operations beginning in 1961 through the 1990's that created spoil banks that allegedly remain to this day that impacted the navigability and water quality of Lake Chicot, Bayou Cocodrie, and Red Eye Swamp in violation of law and its permit issued by the Army Corps of Engineers.  [Paras. 158-159, 176, 213]

7. Dow Chemical Co. conducted dredging operations in 1971 and 1973 that created spoil banks that allegedly remain to this day that impacted the navigability and water quality of Lake Chicot, Cocodrie Swamp, Beau Bayou, Bay Baronne, Haha Bay, Cochon Bay and Bayou Cocodrie in violation of law and its permit issued by the Army Corps of Engineers.  [Paras. 193-194].

8. Texaco Pipelines, LLC, through an unidentified predecessor in interest, conducted dredging operations in 1968 that created spoil banks that allegedly remain to this day that impacted the navigability and water quality of Buffalo Cove in violation of law and its permit issued by the Army Corps of Engineers. [Para. 186]

9. Louisiana Land and Exploration Co. (LL&E) conducted dredging operations in 1987 which created spoil banks that allegedly remain to this day that impacted the navigability and water quality of Lake Chicot, Cochon Bay and Red Eye Swamp. [Para 207]  In addition, as part of a plan to free a grounded drill barge in 1988, LL&E created what were to be temporary dams, which were allegedly never removed, that impacted the navigability and water quality of Red Eye Swamp, and Bayou Ella in violation of law and its permit issued by the Army Corps of Engineers.  [Paras. 208-209]

10. Kerr-McGee Federal Limited Partnership, beginning in 1997, conducted dredging operations that created spoil banks which allegedly remain to this day, that impacted the navigability and water quality of Red Eye Swamp in violation of law and its permit issued by the Army Corps of Engineers. [Paras. 224-225]

*B. The applicable legal standard*

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 U.S. at 570.  The plaintiff's obligation is "to provide the 'grounds' of his 'entitle[ment] to relief' [and] requires more than labels and conclusions." *Id.* at 555, citing *Papasan*, 478

U.S. at 286.  The allegations must be sufficient to "raise a right to relief above the speculative level," and the pleading must contain something more than a statement of facts that creates merely a suspicion of a legally cognizable right of action.  *Id.* at 555.

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The determination is context-specific, requiring the court to draw on its common sense and judicial experience.  In *Ashcroft*, the Supreme Court explained further:

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.  *Id*. at 679, 129 S.Ct. at 1950.

The Fifth Circuit explained the *Twombly* plausibility standard of pleading succinctly, as applied to Fed. R. Civ. P. 8(a)(2):

> The complaint(1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim. "Asking for [such] plausible grounds to infer [the element of the claim] does not impose a probability requirement at the pleading

8

stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal [that the elements of the claim existed]."  *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257(5th Cir. 2009), quoting *Twombly*, 550 U.S. at 556.

Thus, while the court is not to give the "assumption of truth" to conclusions, factual allegations remain so entitled.  Once those factual allegations are identified, drawing on the court's judicial experience and common sense, the analysis is whether those facts allow the court to reasonably infer that the defendant is liable for the misconduct alleged.  This analysis is not substantively different from that set forth in *Lormand, supra*, nor does this jurisprudence foreclose the option that discovery must be undertaken in order to raise relevant information to support an element of the claim.  The standard, under the specific language of Rule 8(a)(2), remains that the defendant be given adequate notice of the claim and the grounds upon which it is based.  The standard is met by the "reasonable inference" the court must make that, with or without discovery, the facts set forth a plausible claim for relief under the particular theory of law provided there is a "reasonable expectation" that "discovery will reveal relevant evidence of each element of a claim."  *Lormand*, 565 F.3d at 257; *Twombly*, 550 U.S. at 556.

9

### *Applicable Law and Discussion*

This plaintiff has alleged that, at the time this suit was filed, he had been a commercial crawfisherman in the Atchafalaya Basin for over forty years.  He owns a commercial fishing boat and since the 1960's he has earned his living and supported his family from his crawfish catch.  He has alleged that the defendants, in contravention to what they were permitted to do by the appropriate regulatory agency, conducted their activities in such a negligent manner as to obstruct navigation, completely destroy navigable waterways, and/or block the natural water current such that the water quality, plant and animal life was damaged or destroyed in the specific areas where he fished.  He has linked those adverse effects to spoil banks created by the dredging of navigation and pipeline canals by the named defendants in the same specific areas where he fished.

As a result of the negative impacts to the navigability of the waterways, and to the quality of the fishing grounds where he earned his living, the plaintiff has alleged he has sustained a wide range of  damages from personal injury, to property damage, to increased costs of doing business to economic losses. Further, he has alleged his entitlement to punitive damages based on the conduct of the defendants that was "intentional and/or willful, and/or capricious and/or in reckless, wanton and callous disregard for the rights of the plaintiffs. . ."  [Rec.

10

Doc. 280 par. 106]

In *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 128 S.Ct. 2605 (2008), the plaintiffs seeking compensatory damages were divided into three classes which included landowners and "commercial fishermen and native Alaskans" who brought claims for "economic losses to individuals dependent on Prince William Sound for their livelihood." *Id.,* 454 U.S. 476.  Exxon stipulated its liability based on negligence and the jury awarded hundreds of millions of dollars in compensatory damages.  This award was not the subject of the writ granted by the Supreme Court.  Whether the claims of economic losses by this plaintiff, a commercial fisherman who derives his livelihood from the harvest of crawfish in the waters allegedly damaged by the defendants, would be barred by *Robins Dry Dock & Repair Co. v. Flint,* 275 U.S. 303, 48 S.Ct. 134 (1927), has not been foreclosed by this circuit.  *State of La. Ex rel Guste v. M/V Testbank*, 752 F.2d 1019, 1043-1044 n. 23 (5th Cir. *en banc* 1985) Further, it is not necessary to decide that issue now as the plaintiff has alleged damages other than for purely economic loss.

However, the district court in *Baker* also certified a mandatory class of *all* plaintiffs seeking punitive damages.  The jury decided that the conduct of Exxon and the Captain of the Exxon Valdez was reckless and billions of dollars in

punitive damages was awarded against Exxon.  Although the Court found the

punitive damage claim was excessive as a matter of maritime common law, it

nonetheless rejected the notion that the Clean Water Act preempted a maritime

common law remedy for punitive damages stating:

> If Exxon were correct here, there would be preemption of provisions
> for compensatory damages for thwarting economic activity or, for that
> matter, compensatory damages for physical, personal injury from oil
> spills *or other water pollution*.  But we find it too hard to conclude
> that a statute expressly geared to protecting "water," "shorelines" and
> "natural resources" was intended to eliminate *sub silentio* oil
> companies' common law duties to refrain from injuring the bodies
> and livelihoods of private individuals.
>
> Perhaps on account of its overbreadth, Exxon disclaims taking this
> position, admitting that the CWA does not displace compensatory
> remedies for consequences of water pollution, even those for
> economic harms. . . This concession, however leaves Exxon with the
> equally untenable claim that the CWA somehow preempts punitive
> damages, but not compensatory damages, for economic loss. But
> nothing in the statutory text points to fragmenting the recovery
> scheme this way, and we have rejected similar attempts to sever
> remedies from their causes of action. . . .  All in all, we see no clear
> indication of congressional intent to occupy the entire field of
> pollution remedies . . .nor for that matter do we perceive that punitive
> damages for *private harms* will have any frustrating effect on the
> CWA remedial scheme, which would point to preemption. *Id*., 554
> U.S. at 488-489.    (Emphasis added)

The Clean Water Act specifically defines "pollutant" to include "dredged

spoil".  33 U.S.C. §1362(6).  It further provides in relevant part that, other than in

compliance with 33 U.S.C. §1344, "the discharge of any pollutant by any person

shall be unlawful." 33 U.S.C. §1311(a).  Under §1344(f) Congress itemized the types of dredge material that can be discharged without a permit and, pertinent to the allegations of this case, §1344(f)(2) provides when a permit is required.  The plaintiffs do not seek to enforce compliance with the permit requirements.  Rather, they seek to bring a private action for damages, caused by the harm to their individual livelihood, as a result of the breach of the duty imposed on the defendants, not only by statute, but by the common law duty to refrain from injuring these water bodies by pollution causing activities.

A plain reading of *Baker* suggests that where, as here, a plaintiff pleads the defendant's pollution causing activities were done in reckless violation of a duty owed under a regulatory permit intended to prevent harm to the water body which supports a fishing ground from which he derives his livelihood, the maritime law would allow a remedy of punitive damages.

On these details, as to the remaining defendants, and accepting all of Plaintiff's factual allegations to be true, the undersigned finds that Louis Barras, Sr. has pled enough facts to state a maritime tort claim to relief that is plausible on its face as required by *Twombly* and *Iqbal*.

*Recommendation*

Given the undersigned's earlier recommendation that the claims by *all* parties against Denbury Resources, Inc., Concha Chemical Pipeline, L.L.C., Enterprise Lou-Tex Propylene Pipeline L.P., Bridgeline Holdings, L.P., Shell Pipeline Company LLP, Sorrento Pipeline Company, Wilbros RPI, Inc., and Dow Intrastate Gas Company and their insurers should be dismissed, with prejudice, it is recommended that the Motions to Dismiss Louis Barras, Sr.'s claims against the remaining defendants Hess Corporation f/k/a Amerada Hess Corporation, ConocoPhillips, Southern Natural Gas Company, Exxon Mobil Corporation, El Paso Field Services Management Inc., Union Oil of California, The Dow Chemical Company, Texaco Pipelines, LLC, The Louisiana Land & Exploration Co., Florida Gas Transmission Company, Enterprise Products Company, and Kerr-McGee Federal Limited Partnership and their insurers be DENIED.

Under the provisions of 28 U.S.C. §636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of court.  A party may respond to another party's objections within fourteen days after being served with a copy of any objections or responses to the district judge at the time of filing.

14

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglas v. United Services Automobile Association*, 79 F.3d 1415(5th Cir. 1996).

Signed at Lafayette, Louisiana this 10th day of August, 2012.

Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)

15